## TURNER et al. v. TENNESSEE PRODUCTS & CHEMICAL CORP.—251 S. W. (2d) 441.

Middle Section. June 27, 1952.

Petition for Certiorari denied by Supreme Court, October 10, 1952.

78

James F. Turner, and Jac Chambliss, both of Chattanooga, for plaintiffs in error.

Strang, Fletcher & Carriger, of Chattanooga, and A. A. Kelly, of South Pittsburg, for defendant in error.

FELTS, J. This suit was brought by plaintiffs, W. C. Turner and Jim Pace, on April 19, 1951, before a justice of the peace, to recover of defendant, Tennessee Products & Chemical Corporation, for labor alleged to have been performed by them for it in March, 1946, and for unpaid vacation pay alleged to have been earned during the period from June 1, 1945, to May 31, 1946, under a contract dated May 29, 1946. Defendant pleaded non assumpsit and nil debit.

Defendant was the operator of coal mines and plaintiffs were miners and members of the local union of the United Mine Workers of America. The contract referred to was the Collective Bargaining Agreement which was signed May 29, 1946, by the Secretary of the Interior, J. A. Krug, acting as Coal Mines Administrator under an executive order by which the Government seized the coal mines, and John L. Lewis, president of the United Mine Workers of America.

It is stated in plaintiffs.' brief that this is a test case involving the rights of some 205 former employees of defendant. It was taken by appeal from the justice court to the circuit court. There counsel for plaintiffs stated

that the only matter now involved in the suit was the claim for $100 vacation pay for each plaintiff under the Krug-Lewis contract.

The case was tried before the judge and a jury. At the close of the evidence defendant moved for a directed verdict. The trial judge sustained the motion, held that there was no material issue of fact, discharged the jury, took the case under advisement, and later filed a written opinion holding that there was no evidence of any contract between plaintiffs and defendant, and he accordingly dismissed the suit.

Plaintiffs appealed in error and have filed a number of assignments of error. They insist that the trial judge erred in taking the case from the jury; in holding plaintiffs were not covered by the Krug-Lewis contract of May 29, 1946; in holding that that contract had been rejected by defendant in respect of its coal mines at Whitwell where plaintiffs had formerly been employed; in excluding evidence that plaintiffs were not permitted to draw unemployment benefits during the period from April 1 to June 3, 1946; and in holding that defendant was not estopped to deny liability to plaintiffs for the vacation pay sued for.

It appeared in the evidence that defendant formerly operated two coal mines, one at Reel's Cove and the other, consisting of two openings (Nos. 1 and 9), at Whitwell. Plaintiffs had been employed by defendant at its Whitwell mine for many years prior to March 31, 1946. For a number of years vacation benefits had been provided for the miners under contracts negotiated by the United Mine Workers with the coal operators, beginning with the contract of April 1, 1941.

By that contract it was provided that all miners with a record of twelve months continuous employment with

any one company immediately preceding June 28, 1941, should be paid $20; that in 1942 all miners with a record of twelve months continuous employment with any one company immediately preceding June 1, 1942, should be paid $20; that in both cases $20 token shall be payable in cash or check; and that should a mine worker be transferred from one mine to another owned by the same company during the qualification period he should receive his token.

On December 17, 1943, another contract was made by Secretary Ickes and the United Mine Workers of America. By this contract the vacation pay was increased from $20 to $50 but the provision for twelve months continuous employment preceding June 1, 1943, was not changed. This contract ran till April 1, 1945, when a supplemental contract was made between the operators and the UMWA increasing the vacation pay from $50 to $75, and carrying forward the original provisions in the prior contracts requiring a qualification period of twelve months continuous employment preceding June 1 of each year.

It appears without dispute that each of plaintiffs was paid the vacation pay each year as provided by each of these contracts, up to and including the contract of April 1, 1945. Indeed, there is no claim that there is any unpaid vacation pay owing to either of plaintiffs under any of the contracts prior to the contract of May 29, 1946, the contract sued on.

The provision of that contract on which this suit is based was that an annual vacation period should be the rule of the industry; that "all employees with a record of one year's standing (June 1, 1945 to May 31, 1946) shall receive as compensation for the above-mentioned

vacation period the sum of $100"; and that "pro rata payments for the months they are on the payroll shall be provided for those mine workers who are given employment during the qualifying period and those who leave their employment."

The circumstances under which the contract of May 29, 1946, was made by Mr. Krug and Mr. Lewis are not at all in dispute. The prior contract of April 1, 1945, gave either party the option of terminating it on notice after March 1, 1946. The UMWA, acting through its president John L. Lewis, exercised its option and terminated that contract March 31, 1946.

He issued notice to all members of local unions that the contract would terminate at midnight March 31, and said: "No agreement will be in existence after the above given date, until present negotiations are completed. Each member will be governed accordingly." So under his policy, "No contract, no work," all the miners including plaintiffs, quit work, severed their employment, and ended their employer-employee relation with defendant March 31, 1946.

Since the miners were without a contract and unemployed, and coal production had ceased, the Government seized the mines and Secretary Krug, acting as Coal Mines Administrator, and John L. Lewis, president of the UMWA, negotiated the contract of May 29, 1946, to cover, for the period of Government possession, the terms and conditions of employment in respect to all mines in Government possession which were as of March 31, 1946, subject to the National Bituminous Wage Agreement of March 1, 1945.

Defendant, however, declined to accept this Krug-Lewis contract for its Whitwell mine but did accept it for its Reel's Cove mine. Defendant's president accordingly

notified the Government's representatives by telegrams. Among other things he stated that defendant had suffered a loss of $300,000 in operating the Whitwell mine during 1944 and 1945; and that in the absence of any agreement by the Government guaranteeing defendant against loss in the operation of the Whitwell mine under the Krug-Lewis contract, defendant "does not consent that it be reopened and operated."

One of these telegrams was sent to Mr. Krug stating that defendant accepted the Krug-Lewis contract for its Reel's Cove Mine, Index No. 2021, and this mine was resuming operations. The other wire was sent on June 1 to Vice Admiral Moreel, Deputy Coal Mines Administrator, stating that defendant did not consent that its Whitwell mine, Index No. 95, be reopened and operated under the contract of May 29, 1946.

On June 3, 1946, Vice Admiral Moreel sent a reply which, omitting its formal parts, was as follows:

"Receipt is acknowledged of your telegram of June 1, 1946, stating that because of financial losses you are discontinuing operations at your Whitwell Coal Mine, Whitwell, Tennessee, but that operations are being resumed at your Reel's Cove Mine.

"Since operations of all the mines of your company in Government possession are for your own account and at your own risk, the Coal Mines Administrator interposes no objection at this time to your discontinuing operations at your Whitwell Coal Mine for the reasons stated in your telegram."

The Whitwell mine had been a different enterprise from the Reel's Cove mine, it had a different index number, different employees, and was under the jurisdiction of a different local union from that which had jurisdiction

over the Reel's Cove mine. As stated, it had discontinued operation on March 31, 1946, when the mine workers there terminated their prior contract and severed their employment.

As appears above, the Government interposed no objection to the action of defendant in declining to consent that its Whitwell mine be reopened and operated under the Krug-Lewis contract. It did not reopen in 1946 or 1947, and plaintiffs never went back to work for defendant and have never since worked for it at any place or any time.

 Plaintiffs sued defendant on the Krug-Lewis contract dated May 29, 1946, for the vacation pay provided by that contract. The burden was on them to prove that that contract had been accepted and agreed to by them and by defendant so as to make it a binding contract between them and defendant. We agree with the trial judge that there was no evidence tending to show that the Krug-Lewis contract ever became a binding contract between plaintiffs and defendant.

The Krug-Lewis contract was a contract between J. A. Krug, Coal Mines Administrator, and John L. Lewis, President of the United Mine Workers of America. It did not purport by its terms to be made by them on behalf of mine operators and mine workers. It purported to cover, for the period of Government possession, the terms and conditions of employment in the mines that were in Government possession and had been subject to the prior wage agreement of March 1, 1945.

██ Such terms and conditions merely formed the basis for the contract to be made between each operator and each miner when he was employed. These terms and conditions were in the nature of a general offer which would become the contract of employment when

accepted by each employer and each employee and not before. Earle v. Illinois Cent. R. Co., 25 Tenn. App. 660, 673-675, 167 S. W. (2d) 15, and cases there cited; Cross Mountain Coal Co. v. Ault, 157 Tenn. 461, 9 S. W. (2d) 692; Rentschler v. Missouri P. R. Co., 126 Neb. 493, 253 N. W. 694, 95 A. L. R. 1; Annotation 95 A. L. R. 10, 37; 31 Am. Jur., Labor, sec. 119, pp. 880, 881.

There was no evidence that the contract sued on was a contract between these parties, no evidence that the Krug-Lewis contract, or any of its terms and conditions, ever was accepted or became the contract between plaintiffs and defendant. On the contrary, the evidence affirmatively shows without dispute that that contract was never accepted by either party. Defendant rejected it for its Whitwell mine and its employees there, and plaintiffs never accepted it—never went back to work or became employed by defendant at any place or any time.

There being no evidence that the contract sued on was a binding contract between the parties, it was proper for the trial judge to direct a verdict for defendant, and he did not err in taking the case from the jury and in entering a judgment dismissing this suit.

■ Plaintiffs quote and italicize the provision of the Krug-Lewis contract for vacation pay as follows: "All employees with a record of one year's standing (June 1, 1945 to May 31, 1946) shall receive as compensation for the above mentioned vacation period the sum of $100 * * *. Pro rata payments for the months they are on the payroll shall be provided for those mine workers who are given employment during the qualifying period and *those who leave their employment.*"

This provision itself shows that in order to entitle a mine worker to vacation pay he must be an *employee.* The provision is for *"employees"* and for "mine work-

ers who are given *employment* during the qualifying period and those who leave their *employment*." That is to say, the employer must employ the worker under that contract and make its terms and conditions their contract of employment before the worker can become entitled to the benefits of this provision. Obviously, plaintiffs cannot sue and recover on a contract to which neither they nor defendant ever became a party.

■ One of plaintiffs' assignments of error was that the court erred in sustaining defendant's objection to the introduction by plaintiffs of proof showing that plaintiffs were not permitted to draw unemployment benefits during the period from April 1, 1946, to June 3, 1946. It is said this was error because defendant refused to release the men for these benefits and insisted that work was available and that they were on its payroll.

This assignment of error fails to comply with Rule 11(3) which provides: "When the error alleged is to the admission or rejection of evidence, the specification shall quote the full substance of the evidence admitted or rejected, with citation of record where the evidence and ruling may be found". 29 Tenn. App. 830. The bill of exceptions also fails to show what the evidence was which is said to have been excluded. This assignment is overruled.

■ Another assignment of error of plaintiffs was that the trial judge erred in holding that defendant was not estopped from denying liability to plaintiffs. This was said to be error because defendant applied the Krug-Lewis contract of May 29, 1946, to employees other than plaintiffs who occupied exactly the same position as plaintiffs. It was further asserted that this was error because defendant retained plaintiffs on its payroll until

June 3, 1946, after the qualifying period for vacation pay (June 1, 1945 to May 31, 1946).

This assignment is without merit. While the evidence shows that some of the men who had worked at defendant's Whitwell mine before March 31, 1946, were later reemployed and worked at defendant's Reel's Cove mine and received vacation pay under the Krug-Lewis contract, there is no evidence that defendant applied the Krug-Lewis agreement to any employees who occupied the same status as plaintiffs.

There is no evidence that defendant retained plaintiffs on its payroll after they severed their employment on March 31, 1946. Defendant's witness Russell testified without dispute that plaintiffs were never on the payroll and were never paid anything under the Krug-Lewis contract sued on; and plaintiffs do not even claim that they were ever employed or ever worked for defendant after that contract was made by Krug and Lewis.

This disposes of all the material questions raised by plaintiffs' assignments of error. All of the assignments are overruled. The judgment of the circuit court is affirmed. The costs of the appeal in error are adjudged against plaintiffs.

Howell and Hickerson, JJ., concur.